AUSAs: Dominic A. Gentile,
Jun Xiang, Alexandra Messiter

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 4375

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violations of 18 U.S.C. §§ 2261A, 2261(b), 924(j), and 924(c) |
| LUIGI NICHOLAS MANGIONE, | |
| Defendant. | COUNTY OF OFFENSE: NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

GARY W. COBB, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

## COUNT ONE
### (Stalking – Travel in Interstate Commerce)

1.      From at least in or about November 24, 2024 to in or about December 4, 2024, in the Southern District of New York and elsewhere, LUIGI NICHOLAS MANGIONE, the defendant, traveled in interstate commerce with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, and in the course of, and as a result of, such travel engaged in conduct that placed that person in reasonable fear of the death of, and serious bodily injury to, that person, and in the course of engaging in such conduct caused the death of that person, to wit, MANGIONE, traveled from Georgia to New York, New York for the purpose of stalking and killing Brian Thompson, and while in New York, MANGIONE stalked and then shot and killed Thompson in the vicinity of West 54th Street and Sixth Avenue.

(Title 18, United States Code, Sections 2261A(1)(A) and 2261(b)(1).)

## COUNT TWO
### (Stalking – Use of Interstate Facilities)

2.      From at least in or about November 24, 2024 to in or about December 4, 2024, in the Southern District of New York and elsewhere, LUIGI NICHOLAS MANGIONE, the defendant, with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, used an electronic communication service and electronic communication system of interstate commerce, and a facility of interstate or foreign commerce, to engage in a course of conduct that placed that person in reasonable fear of the death of and serious bodily injury to that person, and in the course of engaging in such conduct caused the death of that person, to wit, MANGIONE used a cellphone, interstate wires, interstate

highways, and the Internet to plan and carry out the stalking, shooting, and killing of Brian Thompson in the vicinity of West 54th Street and Sixth Avenue in Manhattan.

(Title 18, United States Code, Sections 2261A(2)(A) and 2261(b)(1).)

## COUNT THREE
### (Murder Through Use of a Firearm)

3.    On or about December 4, 2024, in the Southern District of New York and elsewhere, LUIGI NICHOLAS MANGIONE, the defendant, during and in relation to crimes of violence for which he may be prosecuted in a court of the United States, namely, the stalking offenses charged in Counts One and Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crimes, possessed a firearm, and in the course of that crime caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a), to wit, MANGIONE shot and killed Brian Thompson in the vicinity of West 54th Street and Sixth Avenue in Manhattan.

(Title 18, United States Code, Section 924(j).)

## COUNT FOUR
### (Firearms Offense)

4.    On or about December 4, 2024, in the Southern District of New York and elsewhere, LUIGI NICHOLAS MANGIONE, the defendant, during and in relation to crimes of violence for which he may be prosecuted in a court of the United States, namely, the stalking offenses charged in Counts One and Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crimes, possessed a firearm, which was brandished and discharged, and which was equipped with a firearm silencer and firearm muffler.

(Title 18, United States Code, Section 924(c)(1)(A)(i), (ii), (iii) and (c)(1)(B)(ii).)

### The Murder of Brian Thompson

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and am assigned to the FBI's Violent Crimes Task Force. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers, my examination of documents obtained through a court authorized search warrant, my review of documents prepared by others, security camera video, and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.     Based on my participation in this investigation, my conversations with other law enforcement officers, my review of documents prepared by others, and my review of security camera video, I have learned, among other things, the following:

a.     On December 4, 2024, at approximately 6:45 a.m., Brian Thompson ("the Victim"), the Chief Executive Officer of a nationwide health insurance company ("Company-1"), was shot and killed by a masked assailant (the "Shooter") while walking on West 54th Street toward a hotel in Midtown Manhattan (the "Midtown Hotel") where a Company-1 investor conference was scheduled to begin at 8:00 a.m. As discussed below, the Shooter was later identified to be LUIGI NICHOLAS MANGIONE, the defendant. Security camera video showed the Shooter, who was wearing a gray backpack (the "Gray Backpack"), come from between two parked cars, walk up behind the Victim, and shoot the Victim in the leg and back outside of the Midtown Hotel's entrance on West 54th Street. The firearm the Shooter used appeared to have a sound suppressing device or "silencer" attached to the front of its barrel. A still image from the security camera video of the shooting is provided below:



b.     Law enforcement personnel who responded to the scene of the shooting recovered, among other items, spent 9mm shell casings and at least one round of live 9mm ammunition. The words "deny," "delay," and "depose" were written on the side of the some of the shell casings. Responding law enforcement personnel also recovered a cellphone in the vicinity of the location where the shooting had occurred.

<u>The Investigation</u>

7.     Based on my participation in this investigation, my conversations with other law enforcement officers, my examination of documents obtained through a court authorized search warrant, my review of documents prepared by others, and my review of security camera video, I know that over the course of the next several days, investigators retrieved and reviewed hundreds of hours of recordings from nearby security cameras to track the Shooter's movements both before and after the murder. From that review, investigators were able to formulate the following timeline of the Shooter's movements from November 24, 2024 up to and including December 4, 2024:

*November 24, 2024*

      a.     On November 24, 2024, at approximately 10:11 p.m., the Shooter arrived in New York City on an intercity bus at the Port Authority bus terminal in Manhattan. The bus originated in Atlanta, Georgia. The Shooter took a taxi to the area around the Midtown Hotel and stayed in the area for approximately one hour before taking another taxi to a hostel located in the Upper West Side of Manhattan (the "Hostel").

      b.     The Shooter registered at the Hostel under the name "Mark Rosario" and provided a false New Jersey driver's license as a form of identification (the "False New Jersey ID"). A photograph of the False New Jersey ID is provided below:



      c.     When the Shooter was checking in at the Hostel, the desk clerk asked the Shooter to remove his mask, which he did, revealing his face to a security camera, as shown below.



Other than this interaction with the desk clerk, the Shooter consistently kept his mask on throughout his time in New York, including while inside the Hostel.

*December 4, 2024*

     d.    On December 4, 2024, at approximately 5:35 a.m., the Shooter left the Hostel wearing the Gray Backpack and rode an electric bicycle down Central Park West to a location near the Midtown Hotel, as shown below:





     e.    At approximately 5:41 a.m., the Shooter walked around the area of the Midtown Hotel and at one point purchased items from a nearby coffee shop. The Shooter then returned to a bench in the vicinity of the Midtown Hotel. On at least one occasion, prior to the murder, the Shooter was depicted using a cellphone.

   f. At approximately 6:45 a.m.—after waiting near the Midtown Hotel for approximately an hour—the Shooter saw and approached the Victim, shot the Victim multiple times, and then fled on foot to West 55th Street, where the Shooter mounted the electric bicycle and rode towards Central Park. After disappearing inside the park for a period of time, the Shooter was captured on video again exiting the park near West 77th Street and Central Park West riding north on Central Park West. When he emerged from the park, the Shooter was no longer carrying the Gray Backpack, as shown below:





   g. At approximately 6:58 a.m., security camera footage captured the Shooter riding the electric bicycle near West 85th Street and Columbus Avenue. Two minutes later, at

approximately 7:00 a.m., the Shooter was captured on video walking near West 86th Street and Columbus Avenue, without the electric bicycle.

      h.     At approximately 7:04 a.m., the Shooter entered a taxi that drove him to the George Washington Bridge Bus Terminal in the vicinity of West 179th Street and Fort Washington Avenue in Upper Manhattan. The Shooter's face was captured by a camera in the taxi, as shown below:



      i.     At approximately 7:30 a.m., video footage from the George Washington Bridge Bus Terminal captured the Shooter entering the facility. No video footage showed the Shooter leaving the bus terminal, suggesting that the Shooter left New York City.

      j.     On or about December 6, 2024, law enforcement officers searching Central Park found a gray backpack matching the appearance of the Gray Backpack worn by the Shooter, as depicted below:



## The Arrest and Identification of the Shooter

8.     Based on my participation in this investigation, my conversations with other law enforcement officers, my examination of documents and items obtained through a court authorized search warrant, my review of documents prepared by others, and my review of security camera video, I know, among other things:

a.     On December 9, 2024, at approximately 9:14 a.m., a worker at a fast food restaurant in Altoona, Pennsylvania called the police about a male customer later identified as LUIGI NICHOLAS MANGIONE, the defendant, who the worker believed resembled photos of the Shooter that had been broadcast in the media following the Victim's murder.

b.     Members of the Altoona Police Department responded and encountered MANGIONE, who they also believed matched the appearance of the Shooter. When approached by responding officers and asked for identification, MANGIONE offered the False New Jersey ID used by the Shooter to check into the Hostel. MANGIONE was later found to be in possession of a loaded 9mm pistol and silencer consistent with the weapon used to kill the Victim, clothing that matched apparel that the Shooter wore in the security camera videos, a notebook (the "Notebook"), several thousand dollars in cash, an envelope associated with an FDIC-insured bank, and a letter addressed "To the Feds" (the "Feds Letter"). The 9mm pistol and silencer were later tested and found to be operable by a ballistics examiner from the New York City Police Department. Photographs of the firearm and the silencer recovered from MANGIONE are depicted below:



c. The Notebook contained several handwritten pages that express hostility towards the health insurance industry and wealthy executives in particular. For example, the Notebook contained the following statements in entries that appear to correspond to particular dates:

i. In an entry marked as "8/15" [August 15, 2024], the Notebook described how "the details are finally coming together" and "I'm glad – in a way – that I've procrastinated, bc [because] it allowed me to learn more about [acronym for Company-1]." The Notebook entry also stated that "the target is insurance" because "it checks every box."

ii. In an entry marked as "10/22" [October 22, 2024], the Notebook stated: "1.5 months. This investor conference is a true windfall . . . and – most importantly – the message becomes self evident." Later on in the entry, the Notebook describes an intent to "wack" the CEO of one of the insurance companies at its investor conference. As described above, October 22, 2024 was approximately 6 weeks before the date of the murder of the Victim, which occurred on the date of Company-1's investor conference.

d. The Feds Letter recovered from MANGIONE stated: "I wasn't working with anyone. This was fairly trivial: Some elementary social engineering, basic CAD, a lot of patience." Based on my own research, I believe that "CAD" refers to "computer-aided design." The Feds Letter also stated: "P.S. you can check serial numbers to verify this is all self-funded. My own ATM withdrawals."

9. Based on all of the above, my review of photographs of the Shooter, and my review of arrest photographs of LUIGI NICHOLAS MANGIONE, the defendant, I respectfully submit that MANGIONE is the Shooter who shot and killed the Victim on December 4, 2024. Additionally, the Notebook entries, the Feds Letter, the Shooter's apparent surveillance of the Midtown Hotel on November 24, 2024 and December 4, 2024, and the Shooter's use of countersurveillance techniques and escape from New York City all suggest that the Shooter undertook extensive efforts to identify the Victim, place the Victim under surveillance, and track the Victim's whereabouts in the time period leading up to the murder. Below are surveillance stills of the Shooter and an arrest photograph of MANGIONE:



(On left: arrest photograph of MANGIONE.  On right: the Shooter at the Hostel.)



(The Shooter inside the taxi.)

WHEREFORE, I respectfully request that a warrant be issued for the arrest of LUIGI NICHOLAS MANGIONE, the defendant, and that he be imprisoned or bailed, as the case may be.

_Gary W. Cobb w/ permission_
GARY W. COBB
Special Agent, Federal Bureau of Investigation

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
18th day of December, 2024

_Katharine H. Parker_
HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York