# AGNIFILO
# INTRATER

April 16, 2025

Via ECF and Email
The Honorable Edgardo Ramos
U.S. District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re: *United States v. Mangione*, 24 Mag. 4375

Dear Judge Ramos:

We are in receipt of the Government's letter dated April 14, 2025, in response to Mr. Mangione's motion filed April 11, 2025. We submit this letter in reply. As an initial matter, the Government has not contested any of the facts set out in our motion. Instead, the Government makes the following assertions: (1) that the defendant's motion is not ripe, as the case is not yet indicted; and (2) that the defendant cannot dictate "the manner in which the Government presents evidence to the grand jury." We will address these issues below.

The Government has not responded to the other four points raised in defendant's motion: (1) ordering the Attorney General to certify that she read Local Rule 23.1; (2) restraining the Attorney General from making extrajudicial statements in violation of Rule 23.1; (3) ordering the Government to produce for *in camera* inspection any documents from the S.D.N.Y.'s and the Attorney General's consideration of the death penalty; and (4) ordering the Government to produce documents of communications between the Government and anyone advocating for any particular sentence by or on behalf of any business, corporate interest, lobbying or other party, directly or indirectly.

1. **The District Court's Supervisory Authority Over the Grand Jury Allows It to Remedy Clear, Substantial, Undisputed Violations of Due Process Occurring Before the Grand Jury in A Capital Case on These Facts**

The Government argues that the Court should not take action—not because the Government offers facts contrary to those advanced by the defense—but because the matter is not ripe for adjudication as it is a grand jury matter. However, this Court retains what the Supreme Court has called a supervisory authority over the administration of justice. *See McNabb v. United States*, 318 U.S. 332, 341 (1943; *Offutt v. United States*, 348 U.S. 11 (1954); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 253 (1988). This supervisory authority is not limited to the inside of a federal courtroom. Rather, it extends to eliminating prejudicial extrajudicial statements that may affect the grand juries who sit in this district and whose indictments will be heard by this Court. Local Rule 23.1(b). Accordingly, this Court need not wait until an Indictment is returned and a Notice of Intent to seek the death penalty is filed. The United States Attorney General has made a very public and prejudicial directive that death be sought. Moreover, because the Attorney

General has violated Rule 23.1 and has prejudiced this grand jury process, this matter is ripe right now. Once a prejudiced grand jury returns a death-eligible indictment, it is simply too late.

### A.     The Supervisory Authority of Federal Courts

There is Supreme Court precedent for federal courts intervening in cases as part of what has been described as their inherent supervisory authority. *See McNabb v. United States*, 318 U.S. 332, 341 (1943) ("judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence"); *Offutt v. United States*, 348 U.S. 11 (1954); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 253 (1988) ("In the exercise of its supervisory authority, a federal court may within limits formulate procedural rules not specifically required by the Constitution or Congress").

The supervisory authority doctrine is particularly appropriate for situations where a decision is based on bias or lack of process, as is the Attorney General's directive here, and where no other law or rule would apply to curtail it. *See Offutt*, 348 U.S. 11. The *Offutt* decision offers a useful analogy to the present case as it stands broadly for the proposition that the federal courts should always be alert for decisions impacting life and liberty that are not free from bias and lack of due process. There, the Supreme Court reviewed a decision of the District Court which held a defense lawyer in contempt during a criminal trial. The Government's position in *Offutt* was that because the trial judge has broad leeway and discretion in making contempt findings, that the decision was beyond the review of other courts. As the Court noted, "the Government has vigorously pressed upon us the leeway that must be allowed to a trial judge in assessing the necessities of such a situation." *Id.* at 14. Even though the Court could point to no rule, law or precedent curtailing the trial court's decision to hold the lawyer in contempt, the Court availed itself of its "supervisory authority over the administration of criminal justice" to set aside the trial judge's decision. In reaching its decision, the Supreme Court stated, "our concern is with the fair administration of justice," and that "the record is persuasive that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner." *Id.* at 15.

Justice Frankfurter's opinion in *Offutt* is useful to the present case. First, the Court was confronted with a situation where the trial judge was motivated by personal bias or animosity against the defense lawyer, which is why it observed that the trial judge "permitted himself to become personally embroiled" with the lawyer. Second, there was no suggestion that the trial court violated a law or rule in holding the petitioner in contempt; rather, it was a pure matter of discretion. Third, the Court observed that the even in the absence of the trial judge violating a law or rule, the "fair administration of justice" called for the Court's intervention as part of its inherent supervisory authority. We are asking this Court to do here what Justice Frankfurter said was not only appropriate but required to preserve "the fair administration of justice." *Id.* It bears repeating that not only has the Attorney General abrogated the death penalty protocol completely, she has done so in uncontested violation of Local Rule 23.1 which applies explicitly to grand jury proceedings and in a manner that is dangerously prejudicial to this defendant facing a capital indictment.

The inherent supervisory authority of this Court, recognized repeatedly by the Supreme Court of the United States, is at its pinnacle at this very moment.

### B.     The Court's Role Concerning the Federal Grand Jury

When it comes to our grand juries, our local rules use the precise language Justice Frankfurter used in his *Offutt* opinion: "the administration of justice." Local Rule 23.1(b) states, "[W]ith respect to a grand jury . . . investigation, . . . a lawyer associated with the investigation . . . shall refrain from making any extrajudicial statement . . . if there is a substantial likelihood that (it) . . . will . . . prejudice the administration of justice." The Local Rules are overseen and administered by this Court. It is the explicit province of this Court to ensure that the grand juries of this district are not prejudiced by extrajudicial statements. At a minimum, the application of Local Rule 23.1 to grand juries means that this Court has the authority to supervise the conduct of grand juries at least to that extent.

Local Rule 23.1 exists as part of this Court's more general supervisory authority to ensure that the fair administration of justice exists both in the courts and the grand juries. Of course, the particulars of how evidence is presented is the province of the prosecutor. On this point, the government stated that the defense should not be "able to dictate, through the authority of the Court, the manner in which the Government presents evidence to the grand jury." The defense agrees with this statement. But, this is not what we are trying to do. We have no interest in the manner in which evidence is presented to the grand jury. We do not seek to control what witnesses or documents are presented to the grand jury, or dictate what may be said in the grand jury, or even be provided with transcripts of what is presented.

Rather, we seek the Court's intervention only to prevent seating a grand jury whose members have been infected with the Attorney General's improper comments. There is no serious question that the Attorney General violated Local Rule 23.1; it is so obvious that the Government did not even attempt to mount a response to our initial motion. To summarize; the Attorney General, a "lawyer associated with the investigation," made "extrajudicial statement[s]" that provide ample basis to believe would "prejudice the administration of justice," since she spoke publicly about: (i) her past history as a capital crimes prosecutor; (ii) that if there was ever a death penalty case, this is one; and (iii) that she herself has been threatened because of this case; (iv) that a reason for seeking the death penalty is that the victim was a CEO; (v) that Mangione is guilty; and (vi) that Mangione committed two statutory aggravating factors and should be executed. Note, too, that the Attorney General, in all of her statements, never mentioned the small matter of the presumption of innocence or even that Luigi Mangione has yet to be indicted on federal charges.

These statements would be damaging in any case. However, in a death penalty case, it is critical that the Court exercise its inherent authority to ensure Mr. Mangione's rights are protected because, as the Supreme Court has repeatedly emphasized, the death penalty is categorically distinct from other situations and requires heightened protections. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 605 (1978) ("The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases."); *Gregg v. Georgia*, 428 U.S. 153, 189 (1976) ("[W]here discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that

discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.").

2.   **Requested Relief**

In our April 11, 2025, motion counsel requested six forms of relief: (i) Preclude the Government from seeking the death penalty; (ii) Order that any proposed federal grand jurors be screened for exposure to the Attorney General's prejudicial public statements; (iii) Order the Attorney General to certify she has read Local Rule 23.1; (iv) Restrain the Attorney General from extrajudicial statements in violation of the Rule that could prejudice Mr. Mangione's right to a fair hearing by a grand jury, including the grand jury's consideration of death-eligible offenses and factors; (v) Order the Government to produce for in camera inspection any memoranda, documents and notes from the S.D.N.Y.'s consideration of the death penalty, as well as any memoranda, documents, and notes provided to the Attorney General as part of her "careful consideration" of the evidence; and (vi) Order the Government to produce to Mr. Mangione any emails, records, documents, memoranda and notes of any communication between a government official and anyone advocating for the death sentence, or any particular sentence, in this case by or on behalf of any business, corporate interest, lobbyist or other party, directly or indirectly.

The Government failed to challenge requests (iii)–(vi) in their response and has therefore conceded these points. We ask that this Court enter an Order granting (iii)–(vi). As to requests (i) and (ii), counsel has noted above why this issue is ripe and why the Court has Supervisory Authority to grant the requested relief. This matter is also gravely pressing given that the deadlines under Rule 5.1 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3161(b) for the Government to indict or conduct a preliminary hearing expire this Friday, April 18, 2025. Without this Court's intervention, the Government will continue to violate Mr. Mangione's due process rights as they seek the death penalty.

Respectfully submitted,

_____
Karen Friedman Agnifilo
Marc Agnifilo
Jacob Kaplan
AGNIFILO INTRATER LLP
445 Park Ave., 7th Fl.
New York, NY 10022

_____/s/_____
Avi Moskowitz
MOSKOWITZ COLSON
GINSBERG & SCHULMAN
80 Broad Street, Suite 1900
New York, NY 10004